# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUEZETTE H. RICE, | ) | |
| | ) | No. 2:21-cv-90 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Robert J. Colville |
| | ) | |
| NATHAN RICE, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

### MEMORANDUM OPINION

Robert J. Colville, United States District Judge

Before the Court are the following Motions filed by Plaintiff in this matter: (1) a Motion for Summary Judgment or Partial Summary Judgment (ECF No. 115); and (2) a "Motion to Strike Defendants' Improperly Filed Surreply Briefs Docketed at ECF Doc. 126 and ECF Doc. 129 and to Schedule Status Conference" ("Motion to Strike") (ECF No. 131).[1]  The Court has jurisdiction

---

[1] With respect to Plaintiff's request for a status conference, the Court has already provided:

> ORDER denying [140] Motion for Status Conference: The Court is in receipt of Plaintiff's "Emergency Motion to Schedule a Telephone Status Conference" filed in this matter.  The court notes that the case at 22-cv-874, which involved an identical "emergency motion," has been marked as closed, and the Court recently denied Plaintiff's Motion to Amend Judgment Under Fed. R. Civ. P. 59 and Motion for Leave to Amend Under Fed. R. Civ. P. 15 in that matter.  The Court thus also denied the motion for a status conference in that case as moot.  While the Court acknowledges that the Motion for Summary Judgment in the present matter has been pending since July 20, 2022, the Court notes that briefing on that Motion continued until March of 2023.  Further, any assertion that the Court has been dilatory in addressing motions in this matter is meritless, as the Court has issued three memorandum orders (ECF Nos. 70, 105, and 106) in this case, addressing, in total, seven (7) motions filed by the Plaintiff herself.  The Court's present schedule has resulted in some delay in its consideration of civil matters, but the Court notes generally that it is aware of Plaintiff's Motion for Summary Judgment, and that it intends to address the same in due course.  To the extent Plaintiff still desires a status conference following the representations herein, she may renew the instant motion within 14 days, specifying why such a conference is warranted.  Otherwise, the Court anticipates scheduling a status conference after it has ruled upon Plaintiff's summary judgment motion

ECF No. 141.

in this matter pursuant to 28 U.S.C. § 1332(a). Defendants Nathan Rice, Inc. ("NRI"), Edward

Rice, The Sidney David Rice Irrevocable Trust ("the Trust"), Walnut Capital Management, Inc.

("Walnut"), and Hempstead Road Associates ("HRA") (collectively, "Defendants") oppose each

of the Motions at issue. Plaintiff's Motions have been fully briefed and are ripe for disposition.

Plaintiff seeks summary judgment under Federal Rule of Civil Procedure 56 on her claims

for declaratory judgment, and sets forth the following bases for summary judgment:

> (1) [T]hat Herbert L. Rice effectively terminated the Shareholder Agreement by his
> letter dated June 24, 2018 and that the assets of the HR division are no longer held
> in Nathan Rice, Inc., but, rather are the property of the Plaintiff, Suezette H. Rice;
> (2) that Defendants have improperly withheld, and continue to withhold as of the
> time of the filing of the within Motion for Summary Judgment, the distributions
> owed to Plaintiff; (3) that Defendants have improperly encumbered the Hempstead
> Road Property without the knowledge or consent of Herbert L. Rice and Plaintiff,
> Suezette H. Rice and continue to do so, and, as a result, the mortgage has no effect
> upon the property of the Plaintiff; (4) that Defendant, Edward Rice and the Sidney
> David Rice Irrevocable Trust never signed a Joinder Agreement, as required by the
> Shareholder's Agreement, until December of 2021, and, as such, Defendant was
> not a member of Nathan Rice, Inc. during the time for which Defendant seeks
> indemnification and, further, had no authority to act as President of Nathan Rice,
> Inc.; (5) that Paragraph 7 of the Shareholder Agreement providing for
> indemnification did not survive Herbert L. Rice's June 24, 2018 termination of the
> Shareholder Agreement; and (6) that the Defendants' material breach of the
> Shareholder Agreement excuses any remaining performance by the Plaintiff.

Br. in Supp. 6-7, ECF No. 117. Plaintiff's Proposed Order requests that the Court hold and declare

as follows:

> (1) [T]hat Herbert L. Rice terminated the Shareholder Agreement dated March 9,
> 2014 by his letter dated June 24, 2018; (2) that Plaintiff, Suezette H. Rice is entitled
> to the distributions being improperly withheld by the Defendants; (3) that Nathan
> Rice, Inc. has operated [NRI] in violation of Pennsylvania Law and that as a result
> the Defendants have breached the Shareholder Agreement dated March 9, 2014; (4)
> that Nathan Rice, Inc. must be judicially dissolved and a liquidating receiver be
> appointed; (5) that Suezette H. Rice's 45.86% of 13.07% of the Hempstead Road
> Property shall be distributed to Plaintiff; and (6) that Suezette H. Rice's ownership
> interest in the Hempstead Road Property shall be distributed free and clear of any
> encumbrance placed on the Property since Herbert's termination of the Shareholder
> Agreement on June 24, 2018.

ECF No. 119-2.  Plaintiff also requests dismissal of the Trust's Amended Counterclaim (ECF No. 85).  *Id.*

## I.     Factual Background & Procedural History

Unless otherwise noted, the following facts are not in dispute:

On March 9, 2014, Herbert Rice and Sidney Rice entered into a Shareholder Agreement (the "Shareholder Agreement") as shareholders of NRI.  Concise Statement ¶ 1, ECF No. 116. The Shareholder Agreement created two divisions within NRI: the HR division, run by Herbert Rice, and the SR division, run by Sidney Rice.  *Id.* at ¶ 3.  Paragraph 1 of the Shareholder Agreement, titled "Operation of the Corporation," provides:

> The Shareholders agree that they will create two (2) divisions, the HR Division and the SR Division within the Corporation.  Each Shareholder shall be free to operate his division without interference or oversight from the other Shareholder, subject to the terms of this Agreement.  Each Shareholder shall be solely responsible for any expenses or liability incurred in the operation of his division, and shall be solely entitled to retain any income or profit from the operation of his division, without respect to the percentage ownership of the Corporation.  Neither Shareholder shall have any obligation to contribute capital to the Corporation, but may voluntarily contribute capital to his division as he, in his sole discretion, deems necessary. Either Shareholder may at any time request that the assets (subject to the liabilities) of his division be transferred to him or his nominee, provided that such Shareholder shall be solely responsible for, and shall indemnify the other Shareholder for, any taxes payable with respect to the transfer.

ECF No. 116-1 at 1.

Pursuant to the terms of the Shareholder Agreement, the SR division owned 54.14% of the issued and outstanding common stock of NRI, and the HR division owned 45.86% of the issued and outstanding common stock of NRI.  Concise Statement ¶ 5-6, ECF No. 116.  On September 8, 2018, Herbert Rice notified Michael Goldstein, CFO of Walnut, that the HR division was not listed as a separate entity on the Investor Portal of NRI, to which Michael Goldstein replied that he would

correct that issue.  *Id.* at ¶ 7.  Separate EIN numbers for the HR division and SR Division NRI

were never obtained.  *Id.* at ¶ 8.

Paragraph 14 of the Shareholder Agreement provides as follows with respect to "Successor

Shareholder":

> The terms of this Agreement shall be binding upon, inure to the benefit of and shall
> be enforceable by the parties hereto, their heirs, legatees, personal representatives,
> successors or permitted assigns.  No transfer by either Shareholder of shares of
> stock of the Corporation (including transfers at death and by operation of law) shall
> be effective unless the transferee has executed a joinder to this Agreement agreeing
> to be bound by its terms.

*Id.* at ¶ 9.  Paragraph 8 of the Shareholder Agreement provides as follows with respect to

termination of the Shareholder:

> This Agreement shall automatically terminate upon the happening of any of the following
>
> events:
>
> A. The written request of a Shareholder to transfer the assets of his division (subject
>
> to the liabilities of his division) from the Corporation.
>
> B. The written consent of the Shareholders; or
>
> C. The restructuring of the Corporation in a tax-free reorganization.

*Id.* at ¶ 10.

Paragraph 5 of the Shareholder Agreement provides as follows with respect to "Division

of Other Assets":

> The Shareholders agree to divide all other assets owned by the Corporation in
> accordance with the percentages set forth in the Preambles.  Specifically, the
> Corporation will request that the partnership interest held in Hempstead Road
> Associates be split between the Shareholders, and that any distribution be sent to
> each Shareholder separately.  Likewise, the Corporation will divide any remaining
> cash held by the Corporation in accordance with the percentages set forth in the
> Preambles.

*Id.* at ¶ 11.  Paragraph 6 provides:

The Shareholders agree to cooperate to sign such resolutions, and take such action as is necessary to effectuate the terms of this Agreement, including signing such bank resolutions as may be necessary for each of HR and SR to maintain bank accounts or to borrow for his respective division without the participation of the other Shareholder.

ECF No. 116-1.  Paragraph 4 of the Shareholder Agreement provides:

Each Shareholder shall maintain his own books and records, and shall account for all income and expenses separately from the other.  Each Shareholder shall provide income and expense information at least annually to Howard Plung, CPA, for preparation of a tax return or returns (as he shall determine), and shall pay such tax on his taxable income without contribution from the other Shareholder.  Neither Shareholder shall have the right to view or inspect the books or records of the other Shareholder, and each Shareholder waives fully such right as may exist at law to receive annual financial statements of the Corporation.

*Id*.

Plaintiff Suezette Rice is the adult daughter of Herbert Rice.  Concise Statement ¶ 12. Edward Rice is a trustee of the Trust and, at all times material hereto, has held himself out as the President of NRI.  *Id.* at ¶ 13.  HRA is comprised of the following partners: Todd Reidbord, Gregg Perelman, Brad Perelman, the Estate of Howard Plung, Harvey E. Robins, the Estate of Richard Kelly, Richard Weisman, Arlene Weisman, Evelyn Talbott, Alex Kasdan, Lanie Francis, Mallory Kasdan, Rosalyn Silverman Revocable Trust, and the Estate of Donald Plung.  *Id.* at ¶ 17.

Sidney Rice passed away on November 2, 2015.  *Id.*  at ¶ 18.  Edward Rice executed a Joinder Agreement as required by Paragraph 14 of the Shareholder Agreement after the passing of Sidney Rice in December of 2021, approximately six (6) years after the passing of Sidney Rice. *Id.* at ¶ 21.  Despite the absence of a Joinder Agreement joining the Trust and/or Edward Rice to the Shareholder Agreement, Edward Rice has held himself out as President of NRI since the passing of his father in 2015.  *Id.* at ¶ 22.  No election was held to elect Edward Rice as president of NRI.  *Id.* at ¶ 23.

With respect to interrogatories that were sent to Edward Rice requesting corporate records, corporate records books, and any corporate documents or minutes for NRI, the parties have agreed that Edward Rice's response to such interrogatories is that there are no such records, record books, minutes, or other documents, and that neither Mr. Rice nor Mr. Strassburger, on behalf of Mr. Rice, can or will produce such documents.  Concise Statement ¶ 24, ECF No. 116.  Edward Rice did not hold a corporate shareholder meeting or Director's meeting for NRI from 2015 to the present, and no officers or directors for NRI have been elected.  *Id.* at ¶¶ 25-26.

On June 24, 2018, Herbert Rice sent a letter to Edward Rice stating: "I, Herbert L. Rice, is [sic] terminating the Nathan Rice, Inc. shareholder agreement dated March 9, 2014 and have assets of my division transferred to me in accordance with section 8a of the shareholder agreement." *Id.* at ¶ 27.  Edward Rice received this letter, and he considered the letter to mean that Herbert Rice had withdrawn from NRI.  ECF No. 116-4 at 33:7-35:16.  On June 21, 2018, Michael Goldstein, CFO of Walnut, sent a letter to Herbert Rice stating: "[p]ursuant to [Herbert's] earlier correspondence, we have as of today retitled your ownership interest in Hempstead Road Associates as follows: Herbert L. Rice and Suezette H. Rice, WROS (with right of survivorship). If this was not your intention, please contact our office immediately." *Id.* at ¶ 28.

Suezette Rice and Herbert Rice received ten (10) quarterly distribution checks from Walnut, each of which was made out to "Herbert L. Rice and Suezette H. Rice, as joint tenants with the right of survivorship," during the timeframe of February of 2018 through November of 2020.  Concise Statement ¶¶ 29; 31, ECF No. 116.  Chelsie Costa, Senior Accountant of Walnut, confirmed that investor statements received by Suezette Rice and Herbert Rice between 2018 and 2020 from Walnut correctly listed the recipients of the statements as "Herbert L. Rice and Suezette H. Rice, Joint Tenants with rights of survivorship." *Id.* at ¶ 30.  Defendants, by and through their

attorney, Michael Gaetani, directed Walnut to stop making distributions to Suezette Rice and Herbert Rice via a correspondence dated November 2, 2020.  Concise Statement ¶ 33, ECF No. 116.  Neither Plaintiff nor Herbert Rice has received a distribution since that letter was sent.  *Id.* at ¶ 34.

HRA was created as a General Partnership on January 23, 1990 for the purpose of owning, developing, operating, leasing, and otherwise dealing with real estate in the City of Pittsburgh. Concise Statement ¶ 36, ECF No. 116.  HRA's Partnership Agreement provides: "the Partnership shall hold as Trustee for Nathan Rice, Inc. IN TRUST an undivided 13.07 percent of the fee title to said real estate, and said interest of Nathan Rice, Inc., (hereinafter referred to as 'Rice'), shall be accounted for and treated as an undivided ownership in fee of the property."  *Id.* at ¶ 37.  On December 18, 2020, HRA adopted an "Action by Unanimous Written Consent of its Partners," by which HRA sought to: (1) enter into a defeasance of the loan originally made by GS Commercial Real Estate, L.P., which loan was in the amount of $6,056,250.00; (2) enter into a mortgage in an amount of $9,262,500.00 with Dollar Bank, Federal Savings Bank; and (3) encumber the following properties of Hempstead Road Associates: 5615-5625, 5628, 5629, 5635, and 5645, Hempstead Road, 14th Ward, City of Pittsburgh, Allegheny County, Pennsylvania 15127; and 2105, 2019 Wightman Street, 14th Ward, City of Pittsburgh, Allegheny County, Pennsylvania 15127 (the "Hempstead Road Property").  *Id.* at ¶¶ 38-41.

On December 16, 2020, HRA entered into a loan agreement with Dollar Bank encumbering, and continuing to encumber, the properties listed above.  *Id.* at ¶ 42.  The managing partner of HRA may have been aware of Herbert Rice's request to transfer the assets of the HR Division to Herbert Rice, individually, prior to entering into the Loan Agreement with Dollar Bank.  *Id.* at ¶ 43.  As the purported president of NRI, Edward Rice Edward Rice executed the

Action by Unanimous Written Consent of Hempstead Road Associates on December 18, 2020. *Id.* at ¶ 44. Prior to executing that document, Edward Rice struck a portion of the signature block on the document containing Herbert and Suezette Rice's interest of 5.993% of the Hempstead Road Property, and instead wrote in the percentage interest held by NRI as 13.075%. *Id.* at ¶ 46. Herbert and Suezette Rice did not sign or authorize the signing of this document, and they were first made aware of the encumbrance of the HRA Property during a mediation in the present action. *Id.* at ¶¶ 48-50. Dollar Bank was provided a copy of HRA's Partnership Agreement, and thus had knowledge that NRI owned an undivided 13.07 percent of the fee title to the HRA Property. *Id.* at ¶¶ 51-52.

Plaintiff asserts that, "[a]s a result of the refinancing of the Hempstead Road Associates Property, Herbert L. Rice and Plaintiff, Suezette H. Rice were entitled to a distribution in the amount of One Hundred and Seven Thousand, Four Hundred and Five Dollars and 82/100 ($107,405.82)." Concise Statement ¶ 53, ECF No. 116. Defendant disputes this assertion, averring that "[a]ny distributions to Herbert and Suezette were subject to various liabilities, including tax considerations." Resp. to Concise Statement ¶ 53, ECF No. 122. Edward Rice received a distribution for the SR division's share of the proceeds from the refinance of the HRA Property. Concise Statement ¶ 54, ECF No. 116. Defendants have withheld, and continue to withhold, Herbert Rice and Suezette Rice's distribution resulting from the refinance of the HRA Property, as well as all past, present, and future distributions, with all such distributions being held in escrow. *Id.* at ¶¶ 55-56.[2]

On April 25, 2017, Herbert Rice transferred 49% of his shares in NRI to Suezette Rice. Concise Statement ¶ 57, ECF No. 116. Plaintiff avers that this transfer "was not effective until

---

[2] These facts are undisputed, but Defendants assert that "[a]ny distributions to Herbert and Suezette are subject to various liabilities, including tax considerations." Resp. to Concise Statement ¶¶ 55-56, ECF No. 122.

May 26, 2022, when Suezette Rice signed a Conditional Joinder Agreement." *Id.* at ¶ 58.  On March 7, 2019, Herbert Rice created the Herbert L. Rice Trust, which designates Suezette Rice as the successor Trustee.  *Id.* at ¶¶ 59-60.  On January 14, 2021, Herbert Rice transferred, "all of the Assignor's interest in 458.6 shares of stock of Nathan Rice, Inc." to the Herbert L. Rice Trust, with said assignment providing that "[t]he assignor intends that this Assignment shall be effective to transfer ownership of the Property to Assignee even though title to or the ownership of the Property may remain in the Assignor's individual name."  *Id.* at ¶¶ 61-62.

Herbert Rice passed away on April 4, 2022.  Concise Statement ¶ 63, ECF No. 116.  On April 30, 2022, Suezette Rice, acting as Trustee of the Herbert Rice Trust, assigned all of the Trust's assets, including the 458.6 shares of common stock in NRI, to herself, and she is thus now the owner of all 458.6 shares of common stock in NRI formerly owned by Herbert Rice.  *Id.* at ¶¶ 64-65.  On May 26, 2022, Suezette Rice executed a Conditional Joinder Agreement pursuant to Paragraph 14 of the Shareholder Agreement, by which she agreed to be bound by the Shareholder Agreement only in the event that it is determined that Herbert Rice's termination of the Shareholder Agreement was ineffective.  *Id.* at ¶¶ 66-67.

Paragraph 7 of the Shareholder Agreement provides that, "[e]ach shareholder agrees to indemnify and hold the other harmless from any expense or liability arising out of the operation of his separate division."  Concise Statement ¶ 70, ECF No. 116.  Plaintiff avers that "[n]either [Edward Rice nor the Trust] were parties to the Shareholder Agreement of Nathan Rice, Inc. for the periods of time that the Trust seeks indemnification pursuant to the present litigation."  *Id.* at ¶ 72.  Defendants dispute this assertion, arguing that the assertion is belied by Plaintiff's pleadings in this case.  Resp. to Concise Statement ¶ 72, ECF No. 122.

9

There was a previous lawsuit between Edward Rice and Herbert Rice involving the Shareholder Agreement that was eventually resolved by a settlement agreement requiring the parties to pay their respective shares of tax obligations.  Concise Statement ¶¶ 75-77, ECF No. 116.  Plaintiff has retained a tax professional to assist her in determining the tax consequences stemming from the prior settlement agreement and Plaintiff's participation in NRI.  *Id.* at ¶¶ 78-85.  Defendant has also retained a tax professional to consult as a tax accountant relative to the tax consequences of Plaintiff's participation in NRI.  "Defendants' Material Facts" ¶ 11, ECF No. 122.

Plaintiff asserts that Herbert Rice owed no obligation to provide information, and had no relevant information, that would be necessary to file federal tax returns on behalf of the Trust. Concise Statement ¶ 86, ECF No. 116.  Plaintiff asserts that Herbert Rice provided the HR Division information necessary to accurately file federal and state tax returns on behalf of NRI on or before November 12, 2019. Id. at ¶ 87.  Plaintiff asserts that Herbert Rice has paid all taxes and has supplied proof that taxes had been paid on the transfer of the Herbert Rice Division Exchange Property.  *Id.* at ¶ 88.  Plaintiff further avers that Herbert Rice made tax payments related to Herbert's tax obligations to the IRS on March 12, 2020 and to the Commonwealth of Pennsylvania on March 3, 2020, and that Plaintiff provided proof of the same to Defendants.  *Id.* at ¶¶ 89-92. Defendants dispute each of these assertions, averring that:

> The lack of cooperation of the HR Division's shareholder in providing information to the accountant has resulted in significant additional work, amended returns, delayed preparation of 1099's, etc.   The HR Division shareholder did not understand the legal significance of the March 2014 shareholder agreement creating 2 divisions within one corporation.   The result has been very expensive for the majority shareholder.  This amount of additional work over the last several years related to the preparation of tax returns, amended tax returns, information reporting forms, tax basis financials, specifically related to the HR Division is estimated to be well in excess of $10,000, none of which has been paid by the HR Division.

Resp. to Concise Statement ¶¶ 87-89.[3]  They further argue that that the tax payments referenced

by Plaintiff were not made pursuant to the tax implications described in this matter, and that these

payments were only made as a result the settlement agreement in the previous litigation.  *Id.* at ¶¶

90-92.

Plaintiff avers, and Defendants dispute that, because NRI has never distributed the

Hempstead Road Property or interest therein to Plaintiff, Plaintiff has no obligation to pay

corporate or personal taxes on the Sidney David Rice Irrevocable Trust Property.   Concise

Statement ¶ 93, ECF No. 116.  Neither Plaintiff nor the tax professional she has hired have received

any notification of a balance due from the IRS or the Commonwealth of Pennsylvania.  *Id.* at ¶ 94.

The parties disagree as to whether Defendants would have been able to previously perform a tax-

free reorganization, separating Herbert Rice's interest in NRI from the Sidney David Rice

Irrevocable Trust's interest in NRI.  *Id.* at ¶ 95.  While Defendants seemingly do not dispute that

the same would have been possible under some circumstances, they assert that Herbert Rice's

consistent failure to provide tax information or cooperate with NRI's accountant rendered such a

reorganization impossible.   Resp.to Concise Statement ¶ 95, ECF No. 122.   In any event,

Defendants did not perform a tax-free reorganization separating Herbert Rice's interest in NRI

from the Sidney David Rice Irrevocable Trust's interest in NRI.  Concise Statement ¶ 96, ECF No.

---

[3] Defendants aver that they need to retain a portion of the Hempstead Road Property escrow funds to compensate Defendants for the following: (1) the SR division's share of the federal and PA Net Operating Loss Carryforwards (NOLs) utilized by the HR division in 2018; (2) the company's additional federal and PA income taxes paid on the amended 2018 federal and PA income tax returns; (3) HR Division's share of the 2019 federal and PA taxes paid by NRI and the 2019 SR Division loss utilized by the HR division; and (4) the HR Division's share of tax and accounting fees related to the preparation of the NRI tax returns.  "Defendants' Material Facts" ¶ 17-20, ECF No. 122.  They further aver that the "federal and state income tax related to this distribution is currently anywhere between $34,089 and $76,837 (plus penalty and interest) depending on the fair market value of the HR Division's share of the NRI Hempstead interest."  *Id.* at ¶ 21.  Defendants express concern that, if they are not permitted to withhold funds for tax liabilities related to the distribution of the HR division's share of the Hempstead Road Property interest, Defendants would be placed in a position of being required to pay taxes out of remaining SR Division assets or risk the IRS and Pennsylvania placing tax liens on the remaining NRI property, owned solely by Defendants, and then being required to "chase" the minority shareholder for reimbursement through litigation.  *Id.* at ¶¶ 14-16.

116.  Plaintiff avers that Defendants' failure to effectuate a tax-free reorganization has resulted in adverse tax consequences to Herbert Rice: (1) in the amount of Sixty-Seven Thousand, Eight Hundred and Forty- Eight Dollars ($67,848.00) in capital gains; and (2) in the amount of the fair market value of the Hempstead Road Property in 2018 over NRI's basis in the property.  *Id.* at ¶¶ 97-98.  Defendants again attribute the responsibility for the lack of a tax-free reorganization to Herbert Rice's purported consistent failure to provide tax information or cooperate with NRI's accountant.  Resp. to Concise Statement ¶¶ 97-98, ECF No. 122.

Plaintiff filed her Motion for Summary Judgment, along with a Brief in Support (ECF No. 117) and a Concise Statement of Material Facts with an attached Appendix of Exhibits (ECF No. 116) on July 20, 2022.  On August 29, 2022, Defendants filed a Brief in Opposition (ECF No. 121) and a Response to Plaintiff's Concise Statement (ECF No. 122).  On September 12, 2022, Plaintiff filed a Reply (ECF No. 124).  On November 8, 2022 and March 10, 2023, Defendants filed unsolicited Supplements (ECF Nos. 126 and 129) to their opposition to Plaintiff's Motion for Summary Judgment, each of which Plaintiff has responded to at ECF Nos. 127 and 130 and moved to strike by way of her Motion at ECF No. 131.  Plaintiff has filed a Brief in Support (ECF No. 132) of her Motion to Strike, Defendants have filed a Response (ECF No. 133), and Plaintiff has filed a Reply (ECF No. 134).

## II.     Legal Standard

Summary judgment may be granted where the moving party shows that there is no genuine dispute about any material fact, and that judgment as a matter of law is warranted.  Fed. R. Civ. P. 56(a).  Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986).  In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations, or determine the truth of the matter; rather, its function is to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party.  *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150–51 (2000) (citing decisions); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998).

The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment.  Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment.  *Liberty Lobby*, 477 U.S. at 248.

The Declaratory Judgment Act provides that federal courts "may declare the rights and other legal relations of any interested part seeking such declaration . . . ." 28 U.S.C. § 2201(a). "Declaratory judgments are intended to 'define the legal rights and obligations of the parties in anticipation of some future conduct' and are not meant to 'simply proclaim that one party is liable to another.'" *Greg Prosmushkin, P.C. v. Hanover Ins. Grp.*, No. CV 20-2561, 2020 WL 4735498 (E.D. Pa. Aug. 14, 2020) (quoting *Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014)).

## III.   Discussion

As noted above, Plaintiff advances several arguments in support of her Motion for Summary Judgment, with several of those arguments being advanced in the alternative and several

arguments that would be moot were the Court to rule in Plaintiff's favor on a separate issue.  As a general proposition, Defendants assert that summary judgment is inappropriate because a bench trial is necessary to allow this Court to address disputed facts and determine whether Herbert Rice terminated the Shareholder Agreement in 2018.  Br. in Opp'n 1, ECF No. 121.  In particular, Defendants point to the differences of opinion expressed by the parties' respective experts as to how "this messy family ordeal" should be resolved.  *Id*.  The Court will address Plaintiff's arguments in turn, while attempting to address the arguments in the most logical and efficient manner possible.

### A.  Motion to Strike

In opposing Plaintiff's Motion for Summary Judgment, Defendants have filed two unsolicited Supplements.  Plaintiff has responded to and moved to strike each of those Supplements.  Each of the supplements is offered to bolster Defendants' argument that the alleged amount in controversy in this matter, i.e., the value of the distributions, is subject to material dispute.

The first Supplement discusses and attaches an email sent by Plaintiff's counsel to Defendants' counsel, wherein counsel inquired as to the amount of money, as of October 2022, that Defendants held in escrow, whether any distributions had been added to the escrow account, and who had control of the escrow account.  ECF No. 126.  The Court agrees with Plaintiff's argument that this email does not establish an issue of material fact.  Plaintiff has asserted that she has received no distributions since November of 2020, and that her injuries are ongoing and continuous.  *See* ECF No. 127.  Defendants are aware of the amount of money they have placed into escrow.  While the Court acknowledges Defendants' argument that certain potential tax obligations may present a material issue of fact, the amount of money actually held in escrow at

this moment is readily ascertainable and is not an issue that the Court would resolve at a bench

trial or one that would prevent summary judgment.  The Court will grant the Motion to Strike as

to ECF No. 126 because the Supplement is immaterial.

The Second Supplement is offered for the same purpose, i.e., that Plaintiff cannot set forth

the amount of the alleged judgment she is asking the Court to enter.  ECF No. 129.  Attached to

the Second Supplement is a letter from Plaintiff's counsel to Defendants' counsel requesting an

accounting of the escrow account and inquiring as to whether a fourth quarter Hempstead Road

Property distribution was placed into the escrow account.  ECF No. 129-1.  For the same reasons

discussed above, the Second Supplement is immaterial and will be stricken.

## B.  Termination of the Shareholder Agreement

Plaintiff argues that Herbert Rice's June 24, 2018 letter terminated the Shareholder

Agreement, and seeks a court order declaring the same.  With respect to contract interpretation

under Pennsylvania law, the United States District Court for the Eastern District of Pennsylvania

has explained:

> "The paramount goal of contract interpretation is to determine the intent of the
> parties."  *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 75 (3d Cir. 2011)
> (quoting *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 587 (3d Cir.
> 2009)).  Pennsylvania contract law begins with the "firmly settled" principle that
> the "the intent of the parties to a written contract is contained in the writing itself."
> *Bohler–Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 92 (3d Cir. 2001)
> (quoting *Krizovensky v. Krizovensky*, 624 A.2d 638, 642 (Pa. Super. Ct. 1993)).
> "The whole instrument must be taken together in arriving at contractual intent.
> Courts do not assume that a contract's language was chosen carelessly, nor do they
> assume that the parties were ignorant of the meaning of the language they
> employed."  *Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 429 (Pa.
> 2001) (internal citations omitted).   "When a written contract is clear and
> unequivocal, its meaning must be determined by its contents alone.  It speaks for
> itself and a meaning cannot be given to it other than that expressed.  [Further,
> where] the intention of the parties is clear, there is no need to resort to extrinsic aids
> or evidence."  *E. Crossroad Ctr., Inc., v. Mellon-Stuart Co.*, 25 A.2d 865, 866 (Pa.
> 1965).

*Apache Stainless Equip. Corp. v. Infoswitch, Inc.*, No. 18-CV-04879-JMY, 2020 WL 4195275, at

*4 (E.D. Pa. July 21, 2020); *see also Huegel v. Mifflin Const. Co.*, 796 A.2d 350, 354 (Pa. Super.

2002) ("In order to determine the meaning of the agreement, we must examine the entire contract

since it is well settled that in construing a contract the intention of the parties governs and that

intention must be ascertained from the entire instrument taking into consideration the surrounding

circumstances, the situation of the parties when the contract was made and the objects they

apparently had in view and the nature of the subject matter. (quoting *In re Mather's Estate*, 189

A.2d 586, 589 (Pa. 1963))).

Paragraph 1 of the Shareholder Agreement, titled "Operation of the Corporation," provides

as follows:

> The Shareholders agree that they will create two (2) divisions, the HR Division and
> the SR Division within the Corporation. Each Shareholder shall be free to operate
> his division without interference or oversight from the other Shareholder, subject
> to the terms of this Agreement. Each Shareholder shall be solely responsible for
> any expenses or liability incurred in the operation of his division, and shall be solely
> entitled to retain any income or profit from the operation of his division, without
> respect to the percentage ownership of the Corporation. Neither Shareholder shall
> have any obligation to contribute capital to the Corporation, but may voluntarily
> contribute capital to his division as he, in his sole discretion, deems necessary.
> *Either Shareholder may at any time request that the assets (subject to the liabilities)*
> *of his division be transferred to him or his nominee, provided that such Shareholder*
> *shall be solely responsible for, and shall indemnify the other Shareholder for, any*
> *taxes payable with respect to the transfer.*

ECF No. 116-1 at 1 (emphasis added). Paragraph 8(A) of the Shareholder Agreement provides

that the Agreement "shall automatically terminate upon. . . [t]he written request of a Shareholder

to transfer the assets of his division (subject to the liabilities of his division) from the Corporation."

As noted, Plaintiff argues that Herbert Rice terminated the Shareholder Agreement on June

24, 2018 when he sent Edward Rice, the Trustee of the Trust, a letter that provided: "I, Herbert L.

Rice, is [sic] terminating the Nathan Rice, Inc. shareholder agreement dated March 9, 2014 and

have assets of my division transferred to me in accordance with section 8a of the shareholder agreement."   Concise Statement ¶ 27, ECF No. 116.   Edward Rice received this letter and considered it to have meant that Herbert Rice had withdrawn from NRI.  ECF No. 116-4 at 33:7-35:16; *see also id.* at 33:7-11 ("Q. I'm asking you a question.  Did Herbert come to withdraw from this shareholder agreement?  A. He opted out of it, yes.  Q. Okay. And how did you become aware of that?  A. He sent a letter.").[4]   Plaintiff argues that the June 24, 2018 letter automatically terminated the Shareholder Agreement, and that the assets of the HR division, including the HR division's 45.86% interest in 13.07% of the Hempstead Road Property, should have been transferred to Herbert Rice following the submission of the letter.  Br. in Supp. 8, ECF No. 117. Plaintiff accurately notes that Herbert's letter was submitted well before the encumbrance of the Hempstead Road Property.  Reply 8-9, ECF No. 125.

Plaintiff further argues that the Defendants recognized the effectiveness of this termination through Walnut CFO Michael Goldstein's June 21, 2018 letter to Herbert Rice stating: "[p]ursuant to [Herbert's] earlier correspondence, we have as of today retitled your ownership interest in Hempstead Road Associates as follows: Herbert L. Rice and Suezette H. Rice, WROS (with right of survivorship).  If this was not your intention, please contact our office immediately."[5]  Br. in Supp. 10, ECF No. 117.  Plaintiff argues that Defendants further acknowledged the termination of the Agreement through Suezette Rice and Herbert Rice's receipt of ten (10) quarterly distribution checks, each of which was made out to "Herbert L. Rice and Suezette H. Rice, as joint tenants with the right of survivorship" and each of which was reflected on investment statements prepared

---

[4] Louis Plung, accountant for NRI, also acknowledged his awareness that Herbert Rice desired to terminate the Shareholder Agreement.  ECF No. 116-3 at 48:10-13.

[5] The Court notes that its decision respecting termination of the Shareholder Agreement ultimately rests on the plain language of the Shareholder Agreement, and not this letter from Michael Goldstein.  The Court feels compelled to note that Mr. Goldstein's letter precedes the purported termination letter submitted by Herbert Rice by three days, and thus could not constitute evidence that Walnut recognized the effectiveness of the June 24, 2018 termination letter.

by Walnut and provided to Defendant, from Walnut during the timeframe of February of 2018 through November of 2020. *Id*. As noted, Edward Rice and Louis Plung were also aware of Herbert's letter requesting the transfer of the HR division's assets to Herbert in his individual capacity. Plaintiff asserts that, despite the same, Defendants fail to acknowledge that the Shareholder Agreement has been terminated and have failed to make a liquidating distribution to Suezette Rice following termination of the Agreement. *Id*.

Defendants argue that Herbert Rice's June 24, 2018 letter did not terminate the Shareholder Agreement because Herbert improperly disclaimed any financial obligations associated with any termination. Br. in Opp'n 2, ECF No. 121. In so arguing, Defendants rely on the portion of Paragraph 8(A) that provides that the assets of the terminating shareholder's division are subject to the liabilities of his division. *Id*. at 4. Defendants assert, and the Court agrees, that neither Paragraph 8 nor the Shareholder Agreement as a whole explicitly defines "liabilities." *Id*. at 6. Defendants argue that "[h]ere, Herbert began the process of terminating the Shareholder Agreement with the HR Letter, but never followed through with the process of accounting for the HR division liabilities[,]" *id*. at 7, that is, Herbert completed the first, but not the second, requirement for termination under Paragraph 8(A), *id*. at 121.

Citing to Paragraph 4 of the Shareholder Agreement, Defendants assert that Herbert Rice and Sidney Rice were each responsible for supplying NRI's accountant with information necessary for the filing of annual tax returns. *Id*. Defendants assert:

> Herbert failed to provide the information necessary to accurately file federal tax returns, failed to pay taxes or otherwise supply proof that taxes had been paid on the transfer of the Herbert Rice Division Exchange Property, failed to pay corporate or personal taxes and failed to return his stock certificate in NRI.

*Id.* Defendants aver that NRI has suffered tax liabilities related to Herbert's attempted termination of the Shareholder Agreement while not following through on settling HR division liabilities, as well as the distribution of the HR division's share of the Hempstead Road Property.[6] *Id.* at 5.

Defendants argue that there exist genuine issues of material fact as to if and when the Shareholder Agreement was terminated and any financial implications, i.e., tax liabilities, resulting from any termination.  Br. in Opp'n 6-7, ECF No. 121.  Defendants assert that, because the definition of "liabilities" in the Shareholder Agreement is unclear, and because there is a disagreement as to the financial implications to Plaintiff's alleged termination of the Shareholder Agreement, summary judgment is not appropriate.  *Id.* at 9.  Plaintiff replies that "[t]estimony is unnecessary to interpret the provisions of the Shareholders Agreement as, '[i]t is well-settled under Pennsylvania contract law that the meaning of a clear and unambiguous written contract and the intent of the contracting parties must be determined from the four corners of the contract.'"  Reply 7, ECF No. 125 (quoting *Glenn Distributors Corp. v. Carlisle Plastics, Inc.*, 297 F.3d 294, 300 (3d Cir. 2002)).  Plaintiff further argues that:

> The Defendants make much of the issue of taxes in order to create the illusion of disputed facts.  Throughout the Shareholders Agreement (*see specifically* Paragraphs 1, 5, 6, and 8) it is abundantly clear that a Shareholder withdrawing from the agreement is both entitled to receive his property and is required to be responsible for the payment of taxes resulting therefrom.  The agreement makes it clear that the transfer is "subject to" the tax liability and is not "contingent upon" the prepayment of a tax liability, if any.  A tax liability does not arise until the transfer/liquidation has occurred, hence the "subject to" provision clearly set forth in the Shareholder Agreement.

---

[6] Defendants calculate that "[t]he estimated federal and state income tax related to this distribution is anywhere between $34,089 and $76,837 (plus penalty and interest)."  Br. in Opp'n 5, ECF No. 121.

Reply 14, ECF No. 125.  Plaintiff asserts that Defendants' argument respecting tax liabilities is nothing more than a red herring offered to distract the Court from what is otherwise a straightforward contract dispute.  *Id.* at 15.

Turning to the parties' experts, Defense Expert Marc Levine answers the five questions posed to him by Defendants in the affirmative, opining that NRI will require a portion of funds currently held in escrow to: (1) satisfy current and former state and federal tax liabilities; (2) compensate NRI for the SR division's share of the federal and state net operating loss carryforwards utilized by the HR division in 2018; (3) compensate NRI for additional income attributable to the HR Division on the 2018 Amended federal and PA income Tax Returns; (4) compensate NRI for the HR division's share of the 2019 annual income from HRA taxable to NRI; and (5) compensate NRI for accounting fees paid or owed related to the preparation of NRI tax returns for including the HR division's activity on past and future filed original and amended NRI tax returns.  Levine Report ¶¶ 1;4, ECF No. 121-2.  Plaintiff's Expert, Susan Keeton, opines that Herbert Rice has provided all necessary information for the filing of NRI's 2018 and 2019 tax returns, and that Herbert Rice paid all outstanding balances to the IRS and the Commonwealth of Pennsylvania in March of 2020.  Keeton Report ¶¶ 1-2, ECF No. 116-23.

The Court finds that the competing expert reports make clear that there is a material dispute as to the value of the liabilities attributable to the HR division following Herbert Rice's termination of the Shareholder Agreement, which, as explained below, the Court finds occurred on June 24, 2018.  *See* Keeton Report ¶ 4, ECF No. 116-23 ("Based on the information I have received, there is no federal or state tax due from NRI for the distribution of Herbert Rice's portion of the Hempstead Road property.  Tax is not due until self-assessed or IRS assesses the same.  As NRI is taking the position that the Hempstead Road Property has not been distributed, based on the

information I have received, there is no tax due.  If Herbert Rice's portion of the Hempstead Road Property was distributed in 2018, taxes were due, although the amount of tax has not been determined.")

What is immediately apparent following review of all of the above is that the parties are in agreement that Herbert Rice submitted a written request to transfer the assets of his division from NRI on June 24, 2018.  What has followed is a years' long dispute as to what "subject to the liabilities of his division" means in this context, where Paragraph 8(A) provides that the Shareholder Agreement shall automatically terminate upon the "written request of a Shareholder to transfer the assets of his division (subject to the liabilities of his division) from the Corporation." Defendants are correct that Plaintiff essentially ignores the "subject to" clause of Paragraph 8(A), and  Plaintiff is correct that Defendants essentially ignore that Paragraph 8(A) provides for automatic termination upon the submission of a written request.  Defendants clearly argue that prepayment for liabilities is a condition precedent to termination, while Plaintiff argues that the terminating party will be responsible for their liabilities after termination.

For its part, the Court finds no ambiguity in the plain terms of Paragraph 8(A).  Again, Paragraph 8(A) provides that the Shareholder Agreement shall automatically terminate upon the "written request of a Shareholder to transfer the assets of his division (subject to the liabilities of his division) from the Corporation."   Under the plain language of Paragraph 8(A), automatic termination of the Shareholder Agreement occurs upon the submission of a shareholder's written request to transfer the assets of his division from NRI.  The assets that will eventually be transferred following termination are clearly subject to the liabilities of the terminating party's division under

Paragraph 8(A),[7] but nothing in the plain language of the Shareholder Agreement requires prepayment of those liabilities to effectuate termination. Rather, the Shareholder Agreement provides a clear and definite manner of determining the date of termination, the date the written request is submitted.

To be clear, the Court does not hold that Plaintiff is entitled, at this time, to declaratory judgment holding that the funds in escrow should be immediately transferred to Plaintiff, as Defendants have raised material issues of fact as to the HR Division's liabilities before the liquidating transfer of assets may take place. Plaintiff will also likely be responsible for taxes associated with the transfer under Paragraph 1 of the Shareholder Agreement. *See* ECF No. 116-1 at 1; *but see* Keeton Report ¶ 7(A) ("When Herbert Rice notified Edward Rice that he was terminating the Shareholder Agreement in 2018[,] the Defendants missed yet another opportunity to effectuate a tax-free separation of the two divisions in lieu of distributing Herbert Rice's property in a taxable distribution. . . . As a result of the Defendants' multiple failures, all tax paid by Herbert are considered damages."). That said, the Court hereby holds that the effective date of the termination of the Shareholder Agreement in this case is June 24, 2018, the day Herbert Rice submitted his written request. In determining the liabilities at issue at trial, the Court will look to the liabilities of the HR division as of June 24, 2018.

---

[7] In this way, the Court finds that the "(subject to the liabilities of his division)" clause addresses the item that directly precedes it, that is, the "assets of [the shareholder's] division." Under the plain terms of the Shareholder Agreement, termination is not subject to prepayment of liabilities, rather, the assets that will be transferred are subject to such liabilities. Merriam-Webster provides, in pertinent part, the following two definitions for "subject to": (a) "affected by or possibly affected by (something)"; and (b) "dependent on something else to happen or be true." https://perma.cc/8R42-MG3Y. Black's Law Dictionary provides the following definition for "subject": "3. Dependent on or exposed to (some contingency); esp., being under discretionary authority <funding is subject to the board's approval>." SUBJECT, Black's Law Dictionary (11th ed. 2019). The Court believes that the "subject to" clause of Paragraph 8(A) provides only that the "assets" of the terminating shareholder's division will be "affected or possibly affected by" or "exposed to" that division's liabilities following termination. This reading is further bolstered by the wording of the first paragraph of the Shareholder Agreement, which provides in relevant part: "Either Shareholder may at any time request that *the assets (subject to the liabilities)* of his division be transferred to him or his nominee, provided that such Shareholder shall be solely responsible for, and shall indemnify the other Shareholder for, any taxes payable with respect to the transfer." ECF No. 116-1 at 1 (emphasis added).

### C. Withholding of the Hempstead Road Property Distributions

Plaintiff next asserts that Edward Rice and the Trust have violated their fiduciary duties to Plaintiff by withholding distributions related to the Hempstead Road Property.  Br. in Supp. 13, ECF No. 117.  This argument is materially similar to that advanced above, i.e., that Herbert Rice terminated the Shareholder Agreement in 2018 and that the Defendants have now improperly directed Walnut to pay Plaintiff's distributions to NRI, who continues to withhold those distributions from Plaintiff.  In so arguing, Plaintiff cites to a letter sent by Defendants' counsel to Walnut providing:

> Currently, NRI receives quarterly distributions from Walnut Capital from its interest in the real property owned by Hempstead Road Associates.  Per a request by Herbert L. Rice in June 2018, Walnut Capital began sending quarterly distribution checks directly to Herbert L. Rice for his minority share, despite the fact that such distributions legally belonged to NRI as an entity, which was responsible for all of the federal and state income taxes to be paid on NRI's 13.07% share of the annual net income generated by the Hempstead properties.  NRI needs the majority of these quarterly distributions to pay these corporate level taxes.  While NRI assigns no blame or fault to Walnut Capital for the switch in payees, this switch was not explicitly authorized by NRI and Herbert L. Rice had no authority to make such a change unilaterally.

Br. in Supp. 14, ECF No. 117.[8]  Plaintiff argues that, pursuant to the Shareholder Agreement, Herbert Rice could, and did, unilaterally terminate the Shareholder Agreement, and that the withholding of distributions excludes Plaintiff from the benefits of her interest in the Hempstead Road Property and rises to the level of oppressive conduct sufficient to establish a breach of the fiduciary duties owed to Plaintiff by Edward Rice and/or the Trust.  *Id.* at 15-16.

---

[8] In the Court's estimation, this letter is incorrect in two regards.  First, Herbert Rice was entitled to unilaterally terminate the Shareholder Agreement, as discussed above.  Second, Paragraph 5 of the Shareholder Agreement provides: "Specifically, the Corporation will request that the partnership interest held in Hempstead Road Associates be split between the Shareholders, *and that any distribution be sent to each Shareholder separately*."  ECF No. 116-1 (emphasis added).  Defendants' counsel's direction that payments be made to someone other than the individual shareholder is seemingly in direct contravention of the plain terms of the Shareholder Agreement.

Defendants argue that Plaintiff fails to outline how her demands for funds and/or assets should be distributed, or in what amount.  Br. in Opp'n 2, ECF No. 121.  Defendant argues that Plaintiff is not entitled to any distributions held in escrow by NRI because she has refused accept her financial obligations for departing NRI.  *Id.* at 2.  Defendants assert that Plaintiff may be entitled to the difference between her financial obligations and the distributions to the extent the distributions exceed her financial obligations, subject to Defendants' counterclaim for indemnification.  *Id.*  Defendants assert, however, that Plaintiff fails to account for the liabilities and indemnification associated with the Hempstead Road Property in moving for summary judgment, and that Plaintiff, her expert, and Defendants' expert have all reached different conclusions as to such liabilities.  *Id.* at 10.  Defendants also note that they are seeking indemnity under the Shareholder Agreement for negative tax circumstances allegedly caused by Herbert Rice's failure to properly terminate the Shareholder Agreement.  *Id.*

Defendants further argue that Plaintiff has not established that she is entitled to any share in the Hempstead Road Property, arguing that HRA is a portion of NRI, and that Plaintiff cannot acquire an interest in the Property without financial reconciliation under the Shareholder Agreement. Br. in Opp'n 2-3, ECF No.121.  Defendants state that Plaintiff has acknowledged that, before NRI can be terminated and unwound, an accounting must be performed to determine the value of the Hempstead Road Property since the Property has been refinanced.  Br. in Opp'n 4-5, ECF No. 121.  They assert that the value of the Property is a material fact precluding summary judgment.  *Id.*  Defendants also note that they are holding Plaintiff's distributions in escrow due to outstanding tax obligations owed by Plaintiff.  *Id.* at 4.

Paragraph 5 of the Shareholder Agreement provides as follows with respect to "Division of Other Assets":

> The Shareholders agree to divide all other assets owned by the Corporation in accordance with the percentages set forth in the Preambles.   Specifically, the Corporation will request that the partnership interest held in Hempstead Road Associates be split between the Shareholders, and that any distribution be sent to each Shareholder separately.   Likewise, the Corporation will divide any remaining cash held by the Corporation in accordance with the percentages set forth in the Preambles.

Concise Statement ¶ 11, ECF No. 116.   "Majority shareholders have a fiduciary obligation to minority shareholders of the 'utmost good faith and loyalty.'" *Bair v. Purcell*, 500 F. Supp. 2d 468, 483 (M.D. Pa. 2007) (quoting *Orchard v. Covelli*, 590 F.Supp. 1548, 1557 (W.D. Pa. 1984)); *see also id.* at 484 ("A 'freeze-out' occurs in a closely-held corporation when a minority shareholder is removed from office or his power or compensation is substantially diminished, in an attempt to exclude the shareholder from any meaningful role in the corporation or deny him benefits from the corporation.   Such an attempt by a majority shareholder to 'freeze-out' or 'squeeze-out' a minority shareholder constitutes a breach of this fiduciary duty.   Tactics employed against a minority shareholder to effect such a 'freeze-out' include, but are not limited to: generally oppressive conduct, *the withholding of dividends*, restricting or precluding employment in the corporation, paying excessive salaries to majority stockholders, withholding information relating to the operation of the corporation, appropriation of corporate assets, denying dissenting shareholders appraisal rights, failure to hold meetings and excluding the minority from a meaningful role in the corporate decision-making." (emphasis added) (citations omitted)).

The Court has essentially already resolved this issue in addressing the termination of the Shareholder Agreement.   Because the Court has already held that the Shareholder Agreement was terminated on June 24, 2018, Plaintiff will be entitled to the difference between the HR Division's liabilities as of June 24, 2018 and the Hempstead Road Property distributions, to the extent the distributions exceed her financial obligations.   It strikes the Court that any liabilities that accrued

after that date, and in particular those that resulted from this lawsuit that was commenced nearly

three years after termination of the Shareholder Agreement or the encumbrance of the Hempstead

Road Property that occurred nearly two years after Herbert Rice terminated the Shareholder

Agreement, may have been the result of Defendants' failure to properly interpret the Shareholder

Agreement, but the Court will entertain argument to the contrary to the extent that Defendants

believe that Herbert Rice's or Plaintiff's actions might warrant a different conclusion. *See* Levine

Report ¶ 5, ECF No. 121-2 ("In conclusion, the Escrow Funds were not being distributed by NRI

as the HR Division has substantial past, current, or future liabilities due directly to their actions.

These actions have had / will have a direct federal and PA income tax impact on NRI because NRI

(including the HR Division) is taxed as a C Corporation.  A substantial portion of the amounts due

are directly related to the HR Division's share of the Hempstead interest.  The HR division has

been asserting that it removed this interest from NRI in 2018 despite any legal confirmation of

such action.  If they did, despite any legal formalities of such action, there would be an additional

tax impact on NRI for distributing it out of the corporation and a significant portion of the escrow

funds would be needed just to cover that tax, interest, and penalty."; *but see* Keeton Report ¶ 7(A)

("When Herbert Rice notified Edward Rice that he was terminating the Shareholder Agreement in

2018[,] the Defendants missed yet another opportunity to effectuate a tax-free separation of the

two divisions in lieu of distributing Herbert Rice's property in a taxable distribution. . . . As a result

of the Defendants' multiple failures, all tax paid by Herbert are considered damages.").

Neither party sufficiently addresses the issue of whether the withholding of the

distributions for a period of, at this juncture, more than five years following the termination of the

Shareholder Agreement constitutes a breach of Edward Rice's and/or the Trust's fiduciary duties.

Rather, the parties focus exclusively on the failure to pay the distributions at the time they were

received by NRI.  As discussed, Plaintiff is entitled to the assets of the HR division subject to the liabilities of that division as of June 24, 2018.  Accordingly, Plaintiff is entitled to the distributions only to the extent that they exceed the HR division's liabilities as of June 24, 2018.  The true issue presented herein, at least in this Court's estimation, is whether the amount of time taken to determine the liabilities of the HR division is such that Edward Rice and the Trust have failed to act in good faith and have thus breached their fiduciary duty to Plaintiff and Herbert Rice.  Each side attributes blame to the other for the inability (in Defendants' estimation) or failure (in Plaintiff's estimation) of Defendants to properly calculate the HR division's liabilities as of June 24, 2018 and to transfer the assets, subject to said liabilities, of the HR division to Herbert Rice. Five years strikes the Court as a particularly long time for this process to take place, but the Court also acknowledges the dichotomous positions the parties have maintained for years on this topic. Because the Court is only partially granting the Motion for Summary Judgment, it believes that this issue can be more effectively addressed during a bench trial in this matter.

### D.  Encumbrance of the Hempstead Road Property

Plaintiff next argues that Defendants have improperly encumbered Plaintiff's 45.86% interest in 13.07% of the Hempstead Road Property without obtaining the Plaintiff's consent.  Br. in Supp. 16, ECF No. 117.  Plaintiff argues that, because Herbert Rice had terminated the Shareholder Agreement in 2018, Herbert Rice was not a part of NRI at the time that NRI entered into the "Action by Unanimous Written Consent," which was executed by each of the partners of HRA and by Edward Rice on behalf of NRI, encumbering the Hempstead Road Property.  Plaintiff asserts that HRA was aware of the HR division's share of the Hempstead Road Property, as evidenced by the fact that the Action by Unanimous Written Consent contained a signature block for Plaintiff's interest of 5.993% in the Hempstead Road Property.  *Id.* at 17.  As noted, prior to

executing that document, Edward Rice struck a portion of the signature block on the document containing Herbert and Suezette Rice's interest of 5.993% of the Hempstead Road Property, and instead wrote in the percentage interest held by NRI as 13.075%. *Id.* Herbert and Suezette Rice did not sign or authorize the signing of the Action by Unanimous Written Consent, and they were first made aware of the encumbrance of the HRA Property during a mediation in the present action. *Id.* at 17-18.

Plaintiff argues that, because Herbert Rice owned 45.86% of 13.07% (5.993%) of the Hempstead Road Property on the date that the Property was encumbered, Defendants improperly encumbered the Hempstead Road Property on December 16, 2020 without the knowledge, consent, or authorization of the owners of the 5.993% interest, that is, Herbert Rice or Suezette Rice. Br. in Supp. 18, ECF No. 117. Plaintiff requests a declaration that "any encumbrance created since 2018 on the interest of the Plaintiff in Hempstead Road Associates should be null and void and [that] the interest in Hempstead Road Associates should be conveyed to the Plaintiff, Suezette H. Rice free and clear of any such encumbrances." [9] *Id.*

Defendants again argue that Plaintiff has not established that she is entitled to any share in the Hempstead Road Property, arguing that HRA is a portion of NRI, and that Plaintiff cannot acquire an interest in the Property without financial reconciliation under the Shareholder

---

[9] In her Reply, Plaintiff provides:

> Should this Court declare that, pursuant to the unambiguous language of the Shareholders Agreement, that Herbert L. Rice terminated such Agreement by his letter dated June 24, 2018, this Court may stop there. Herbert L. Rice and Suezette H. Rice would be the owners of the assets of the H.R. division of Nathan Rice, Inc. as of June 24, 2018 and the subsequent encumbrance of their interest in the Hempstead Road Associates Property without their knowledge or consent would be ineffective. Further, even if Herbert L. Rice did not terminate the Shareholders Agreement, in any event, the encumbrance of the Hempstead Road Property without Herbert L Rice's knowledge or consent was improper.

Reply 10, ECF No. 125.

Agreement.  Br. in Opp'n 3, ECF No. 121.  Defendants further argue that, because Herbert Rice was a minority shareholder, his assent or signature was not required for any corporate dealing of NRI, and that Plaintiff fails to cite case law or identify any provision of the Shareholder Agreement that would require otherwise.  *Id.* at 11.

Plaintiff's argument that, if this Court were to find that Herbert's June 24, 2018 letter terminated the Shareholder Agreement, Herbert Rice was the sole owner of his division's 5.993% interest in the Hempstead Road Property as of June 24, 2018, and that any subsequent encumbrance of Herbert's interest in the Hempstead Road Associates Property without his knowledge or consent would be ineffective, is well-taken.  While the HR division's assets are subject to the liabilities of the division, the Shareholder Agreement was, as a matter of fact, terminated on June 24, 2018.  As of that date, it seems that Herbert Rice, and not NRI, was the proper owner of the HR division's 5.993% ownership interest of the Hempstead Road Property, even if Herbert would be required to account for the liabilities of his division.  It is not clear to this Court what authority NRI, the Trust, or Edward Rice would have to encumber a property interest owned only by Herbert Rice.

The problem with Defendants' argument, in this Court's estimation, is that it unconditionally hinges on the Shareholder Agreement remaining in effect following Herbert Rice's letter.  NRI owned its 13.07% interest because of the Shareholder Agreement, but that Agreement was no longer in effect when the Hempstead Road Property was encumbered.  In encumbering the Property, Edward Rice struck a portion of the signature block on the document containing Herbert and Suezette Rice's interest of 5.993% of the Hempstead Road Property.  That such a signature block even existed provides relatively compelling evidence that the parties were aware, or should have been aware, that Herbert Rice, and not the Trust, Edward Rice, or NRI, was the proper owner of that interest at that time.  It is clear that, following the termination of the

Shareholder Agreement, Herbert Rice was no longer a minority shareholder, and Defendants cannot rely on argument that his assent or signature was not required for any corporate dealing of NRI due to his minority shareholder status.  In light of the Court's holding respecting termination of the Shareholder Agreement, the Court struggles to fathom how Edward Rice, the Trust, or NRI could properly encumber the HR division's ownership interest of the Hempstead Road Property after the termination of the Shareholder Agreement.  That said, because the Court has not afforded complete relief on Plaintiff's claims, the Court withholds declaratory judgment on this topic at this time, and will allow for further argument and reserve such a ruling until time of trial.

### E.  Involuntary Dissolution Pursuant to 15 Pa.C.S. § 1981

In the alternative to her arguments respecting termination of the Shareholder Agreement, Plaintiff argues that, to the extent that it is determined that Plaintiff is still a Shareholder in NRI, NRI must be involuntarily dissolved pursuant to 15 Pa.C.S. § 1981 and a liquidating receiver satisfactory to the Court and to Plaintiff should be appointed pursuant to 15 Pa.C.S. § 1985.  Br. in Supp. 10, ECF No. 117.  In light of the Court's rulings above, this asserted basis for summary judgment is moot.  The Shareholder Agreement was terminated on June 24, 2018, and the parties should be prepared to proceed as though it was terminated on June 24, 2018.

### F.  The Trust's Amended Counterclaim (ECF No. 85)

Plaintiff also moves to dismiss the Amended Counterclaim filed by the Trust in this matter, arguing that the Amended Counterclaim fails as a matter of law.  Initially, with respect to Plaintiff's assertion respecting costs for the past lawsuit between the parties, the Trust provides that it "is not requesting indemnification for past lawsuits."  Br. in Opp'n 13, ECF No. 121.  Because the Trust is not seeking fees or costs associated with the past lawsuit, Plaintiff's Motion for Summary Judgment is denied as moot to the extent it seeks judgment on a claim for such fees and costs.

    1.   **Failure of Edward Rice and the Trust to Sign a Joinder Agreement until December of 2021**

In the Amended Counterclaim, the Trust sets forth the following allegations and averments:

> After Sidney Rice died, Edward Rice, in his capacity as a trustee of the Rice Trust, executed a joinder agreement whereby the Rice Trust became a party to the Shareholder Agreement.
>
> Under the Shareholder Agreement: "Each shareholder agrees to indemnify and hold the other harmless from any expense or liability arising out of the operation of his separate division." Paragraph 7 of Shareholder Agreement.
>
>     . . . .
>
> Herbert Rice is liable both under Paragraph 7 of the Shareholder Agreement and pursuant to 42 Pa.C.S.A. §2503 to indemnify Counterclaim Plaintiff for the significant fees it continues to incur in this lawsuit.

Counterclaim ¶¶ 52-53; 63, ECF No. 85. The Trust further asserts that "Herbert's refusal to tender and/or acknowledge to the Rice Trust and/or NRI the taxes incurred from any alleged termination of the Shareholder Agreement is in material breach of paragraph 8(A) of that agreement," *id.* at ¶ 61, and that "[t]he HR's tax obligations (i.e., liability) due are directly related to Herbert's operation of the HR division of the Rice Trust," *id.* at ¶ 62.

Paragraph 14 of the Shareholder Agreement provides:

> The terms of this Agreement shall be binding upon, inure to the benefit of and shall be enforceable by the parties hereto, their heirs, legatees, personal representatives, successors or permitted assigns. *No transfer by either Shareholder of shares of stock of the Corporation (including transfers at death and by operation of law) shall be effective unless the transferee has executed a joinder to this Agreement agreeing to be bound by its terms.*

Br. in Supp. 19, ECF No. 117 (emphasis added). Sidney Rice passed away in 2015, and left his shares in NRI to the Trust. At that time, neither Edward Rice, as Trustee, nor the Trust executed a joinder pursuant to Paragraph 14 agreeing to be bound by the terms of the Shareholder Agreement. The joinder agreement referenced by the Trust in its Amended Counterclaim was first

executed by Edward Rice during the week of December 27, 2021, approximately six years after the passing of Sidney Rice and three years after Herbert's termination of the Shareholder Agreement.

Plaintiffs argue that, because Edward Rice (in his capacity as trustee of the Trust) did not execute a joinder agreement until December of 2021, the Trust cannot invoke the protection of Paragraph 7 of the Shareholder Agreement with respect to alleged tax repercussions and costs and fees incurred in the present action because it is impossible for such costs to have arisen from the Trust's operation of its own separate division of Nathan Rice, Inc., which Plaintiffs aver is required for indemnification under Paragraph 7 of the Shareholder Agreement. Br. in Supp. 20, ECF No. 117. Plaintiff further argues the Herbert has no obligation to pay corporate or personal taxes on the Hempstead Road Property because tax is not due until it is self-assessed or until the IRS assesses the same. *Id*. Plaintiff argues that, because NRI has not distributed the Hempstead Road Property, there is no tax due. *Id*.

While not denying that Edward Rice (in his capacity as trustee of the Trust) did not execute a joinder agreement until December of 2021, the Trust argues that Plaintiff is bound by her allegations in her Amended Complaint that "Edward Rice is a Trustee of the Sidney David Rice Irrevocable Trust and is the President of NRI," and that "the Sidney David Rice Irrevocable Trust owns a 54.14 percent interest in NRI," and cannot now argue to the contrary after discovery has revealed that Edward Rice failed to execute a joinder as required by the Shareholder Agreement. Br. in Opp'n 11-12, ECF No. 121. This argument essentially asks the Court to assume that facts the Court knows to be true are not true, simply because Plaintiff's pleadings state differently. The Motion before the Court is a motion for summary judgment, and the facts are the facts. It is an undisputed fact that Edward Rice did not execute a joinder until December of 2021, after Plaintiff

had filed her Amended Complaint (ECF No. 74) on November 8, 2021.  In addressing Plaintiff's Motion for Summary Judgment, the Court will not ignore an undisputed fact.

More substantively, the Trust argues that Plaintiff focuses on the second sentence of Paragraph 14, which requires the signing of a joinder, while ignoring the first sentence, which provides: "[t]he terms of this Agreement shall be binding upon, inure to the benefit of and shall be enforceable by the parties hereto, their heirs, legatees, personal representatives, successors or permitted assigns."  Br. in Opp'n 12, ECF No. 121.  The Trust argues that, because Plaintiff pled that Sidney Rice's interest in NRI passed into the Trust on November 2, 2015, Edward Rice, as trustee of the Trust, was, during the timeframe relevant herein, entitled to enforce the provisions of the Shareholder Agreement per Paragraph 14, including the obligation of Plaintiff to pay taxes owed.  *Id*.  Seemingly abandoning its argument that Plaintiff is stuck with her pleadings, the Trust argues that this is true "based upon the language in the Shareholder Agreement, irrespective of any red herring directed at a joinder agreement."  *Id*.  The Trust further asserts that Suezette Rice herself also hid, until the initiation of this action on January 21, 2021, the fact that she was a purported shareholder in NRI following an April 25, 2017 transfer of 49% of Herbert's shares in NRI to Suezette.

As discussed elsewhere in this Memorandum Opinion, the Court has determined that Herbert Rice terminated the Shareholder Agreement via his letter dated June 24, 2018. Accordingly, subject to the Court's discussion below, the Trust cannot seek *indemnification* under Paragraph 7 of the terminated Shareholder Agreement for any expenses incurred after that date. Outside of fees and costs associated with this lawsuit, which are clearly not recoverable under Paragraph 7 given the Court's holding regarding termination of the Shareholder Agreement, the Trust's Amended Counterclaim merely seeks enforcement of Paragraphs 1 and 8(A), i.e., payment

of the taxes associated with the transfer of the HR division's assets and payment of the HR division's liabilities as of June 24, 2018.  Such a request, in this Court's estimation, is subsumed, or "baked into" Plaintiff's request for declaratory judgment holding that she is entitled to the funds held in escrow by Defendants.  Whether Edward Rice or the Trust failed to execute a joinder until December of 2021 has no impact on the Court's consideration of the obligations provided by Paragraphs 1 and 8(A).

The Trust would like to ignore the portion of Paragraph 14 that provides: "[n]o transfer by either Shareholder of shares of stock of the Corporation (*including transfers at death and by operation of law*) shall be effective unless the transferee has executed a joinder to this Agreement agreeing to be bound by its terms."  Neither Edward Rice nor the Trust executed such a joinder until December of 2021, well after the commencement of this action.  The Court will, as it believes the Shareholder Agreement requires, consider the liabilities of the HR division as of June 24, 2018 in resolving Plaintiff's claims. The Court notes, however, that it is highly dubious that, if Edward Rice or the Trust sought damages unrelated to Paragraph 8 arising out of events prior to December 2021, they would be entitled to recover the same in light of their clear failure to comply with the terms of the Shareholder Agreement.

### 2.  Termination of the Shareholder Agreement

Plaintiff also argues that the indemnity provision of the Shareholder Agreement did not survive Herbert's termination of the Shareholder Agreement on June 24, 2018, and that the Trust cannot rely on that provision to recover for any event that occurred after termination.  In dismissing the Trust's Amended Counterclaim, the Court need only substantively address this argument, as it is fatal to the Counterclaim.  In short, Plaintiff argues that, because the Shareholder Agreement does not contain any language that would indicate that the shareholders intended the

indemnification provision to survive after the termination of the Shareholder Agreement, the indemnification provision did not survive Herbert Rice's termination of the Agreement.  Br. in Supp. 21, ECF No. 117.  The Trust again argues that Herbert Rice did not terminate the Shareholder Agreement, that the Shareholder Agreement is still active, and that the SR division is entitled to seek indemnification for fees and costs associated with this action and any negative tax repercussions under Paragraph 7 of the Shareholder Agreement.  Br. in Opp'n 11; 13, ECF No. 121.

The United States Supreme Court has explained:

> Similarly, the Court of Appeals failed to consider the traditional principle that "contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement."  *Litton Financial Printing Div., Litton Business Systems, Inc. v. NLRB*, 501 U.S. 190, 207, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991).  That principle does not preclude the conclusion that the parties intended to vest lifetime benefits for retirees.  Indeed, we have already recognized that "a collective-bargaining agreement [may] provid[e] in explicit terms that certain benefits continue after the agreement's expiration."  *Ibid*.  But when a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life.

*M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 441–42 (2015).

The Trust does not attempt to argue that the indemnity provision of the Shareholder Agreement was meant to survive indefinitely following termination of the Shareholder Agreement, but again simply argues that Herbert Rice did not terminate the Agreement.  As discussed at length throughout this Memorandum Opinion, the Trust is mistaken as to termination.  Even if it had argued that the indemnity provision was intended to survive termination, any such argument would not be persuasive, as the plain language of the provision speaks to the active operation of the individual divisions of NRI.  ECF No. 116-1 ("Each shareholder agrees to indemnify and hold the other harmless from any expense or liability *arising out of the operation of his separate division*."

(emphasis added)).   Once the Shareholder Agreement is terminated, there can be no further operation by the terminating division.

To be sure, and as discussed at length elsewhere in this Memorandum Opinion, Plaintiff will be required to account for the liabilities of the HR division as of June 24, 2018 before receiving distributions.   But that is pursuant to Paragraph 8(A), as the Amended Counterclaim itself acknowledges, not the indemnity provision at Paragraph 7.   The Trust cannot now seek indemnity for costs associated with this lawsuit under Paragraph 7 of the Shareholder Agreement because the Agreement was terminated on June 24, 2018, well before the commencement of this matter. Because that is what the Amended Counterclaim attempts to do, and because resolution of Plaintiff's claims will involve the Court's thorough consideration of the implications of Paragraph 8(A), Plaintiff's Motion will be granted, and the Trust's Amended Counterclaim will be dismissed with prejudice, as the Court finds that amendment would be futile.

### 3. Does a Material Breach of the Shareholder Agreement by Defendants Excuse Plaintiff's Performance?

Finally, Plaintiff argues that Defendants' breach of the Shareholder Agreement excuses any remaining performance that might be owed by the Plaintiff under the Agreement.   Br. in Supp. 22, ECF No. 117.   As the Court has held that Herbert Rice terminated the Shareholder Agreement on June 24, 2018, this argument is moot.

### G.   Attorneys' Fees

The Declaratory Judgment Act provides that "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."   28 U.S.C.A. § 2202. Plaintiff argues that she is entitled to recover her costs and counsel fees based upon the conduct of the Defendants in this case, and that the Court will need to schedule a hearing with respect to the

award of counsel fees.  Because the Court has not afforded full relief on all of Plaintiff's claims, this request is premature.

## IV.    Conclusion

For the reasons discussed above, the Court will grant Plaintiff's Motion for Summary Judgment in part and deny the Motion in part.  The Court will also grant Plaintiff's Motion to Strike.  An appropriate Order of Court follows.

While the Court in no way intends to be heavy-handed, nor does it intend to indicate in any way its thoughts on the ultimate merits of the remaining issues before the Court, the Court feels compelled to note the following argument advanced by Defendants: "[t]his protracted family dispute (essentially between Plaintiff Suezette and her cousin Edward) proves that further business between them is obviously no longer tenable."  Br. in Supp. 6, ECF No. 121.  This assertion states what the Court believes to be the obvious, that the parties would likely be best served in allowing this litigation to mark the end of any business relationship between the parties.

While the Court has resolved major issues presented by Plaintiff, the Court notes that several issues remain, including the heavily disputed issue of the calculation of any liabilities for which the HR division may be responsible.  This is not to mention possible logistical difficulties that may result from the possibility, if not likelihood, that NRI, Edward Rice, and the Trust could not properly encumber Herbert Rice's interest in the Hempstead Road Property following Herbert's termination of the Shareholder Agreement.  With the benefit of the Court's holdings and observations herein and an awareness of the substantive issues remaining, this moment may represent the parties' last and best opportunity to resolve their disputes without further court involvement, and to finally walk away from what has proven to be a tumultuous and protracted business relationship between family members.  While the Court is, of course, more than willing

to schedule whatever might be required, including a bench trial in this matter, it will first schedule

a status conference to discuss whether further ADR efforts may be warranted and, if deemed

necessary at that time, availability for trial and pretrial deadlines.

<div style="margin-left:50%">

BY THE COURT:


/s/Robert J. Colville_____
Robert J. Colville
United States District Judge

</div>

DATED: December 7, 2023

cc: All counsel of record